UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VINCENT E. BOYD,

    Plaintiff,

v.                                         Case No. 12-C-146

CO CLAYTON, CO DAHM,
CO ARROWOOD, SGT. WEISSE,
LT. JENSEN, SGT. PARENT,
UNKOWN DEFENDANT (Property
Records Clerk at Winnebago County Jail),

    Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Vincent E. Boyd, a former detainee at the Winnebago County Jail, filed an action under 42 U.S.C. § 1983 alleging a violation of the First Amendment by Defendants for restricting his access to family photographs. Photographs, some apparently of naked children, and other sexually suggestive drawings were removed from Boyd's cell and either turned over to the district attorney or placed in storage after they turned up in a search. Boyd also alleged a claim of retaliation against Corrections Officer Dahm and Sergeant Weisse for their actions in response to a state replevin action Boyd had filed against them for return of the confiscated photographs. Before me now is Defendants' motion for summary judgment (ECF No. 28). For the following reasons, Defendants' motion will be granted.

# BACKGROUND[1]

The events giving rise to Boyd's allegations began on November 6, 2011, when Corrections Officer Clayton observed Boyd in the shower room alone concocting what appeared to be an alcoholic beverage contrary to jail policy. Clayton then notified Sgt. Weisse about what he observed and was directed to place Boyd in a timeout cell. In the course of collecting Boyd's property from his cell and the law library, Clayton found several items for making hooch, several photographs of children and sexually explicit drawings of a young woman. Clayton then notified Weisse about the photographs and drawings that he noticed while collecting Boyd's property for removal and searching for contraband items used for making alcohol. On November 11, 2011, Sgt. Weisse issued to Boyd a copy of a warrant to search Boyd's property for things that were used or may be evidence of a crime of sexual assault of a child. (Compl. Ex. F, ECF No. 1-7.) Among the pictures sought in the warrant were (1) a picture of a female in lingerie printed on white copier paper, (2) a picture of the same female with her vagina exposed, (3) a drawing of a young girl, and (4) a drawing of the same girl with her vagina exposed. (*Id.*)

On November 29, 2011, Correctional Officer Dahm partook in a shakedown of a block of cells that included Boyd's. During a search of Boyd's cell, Dahm found numerous photos printed on 8½ x 11 sheets of paper. There were about 40 to 50 sheets of paper each containing between 4 and 12 pictures each. Per jail policy, prisoners are only allowed ten 4x6 inch non-Polaroid

---

[1] The background facts, for the most part, are based on Defendants' proposed statement of facts (ECF No. 30). Boyd does not challenge or dispute any of the proposed facts submitted by Defendants. One fact, curiously omitted from the submissions of the Defendants, is that Boyd was in custody on two counts of sexual assault of a child, as shown on the Wisconsin Circuit Court Access website.
http://wcca.wicourts.gov/courtRecordEvents.xsl;jsessionid=FCBC01DCD4E2D97CB8F488960C87E774.render6?caseNo=2010CF000344&countyNo=70&cacheId=F52BFFFA4328BD8B5D97CB537D3C7A40&recordCount=6&offset=2&linkOnlyToForm=false&sortDirection=DESC (last visited on Jan. 2, 2013).

pictures. Dahm, following the policy, seized the pictures and placed them into Boyd's property. Dahm also found 18 sheets containing hand drawings of naked women. Dahm seized these drawings and placed them into an evidence locker.

On December 18, 2011[2], Deputy Arrowood escorted Boyd to the jail's law library. Arrowood observed Boyd remove photographs showing partial nudity of a young girl, about 4 to 5 years old. Arrowood did not allow Boyd to take the photos to his cell and placed them back into Boyd's legal file box. Arrowood later seized the photographs.

Boyd also names Lieutenant Jensen and Sergeant Parent as defendants. Jensen and Parent had no contact with Boyd in any of the above events and appear to have only played a supervisory role over the other named defendants.

## LEGAL STANDARD

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir.1997). A "genuine" issue must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining

---

[2] In Arrowood's affidavit, he states that the events occurred on December 18, 2012, but this appears to be an obvious typographical error. The correct date is December 18, 2011.

whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

**A. First Amendment Claim**

The Supreme Court has long recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Prisoners do not have a protected constitutional right to sexually explicit photographs. *See Trapnell v. Riggsby*, 622, F.2d 290, 292-93 (7th Cir. 1980); *see also Giano v. Senkowski*, 54 F.3d 1050, 1053-54 (2d. Cir. 1995) (collecting cases standing for proposition that prison policies restricting access to sexual photographs are constitutional).

Boyd does not challenge the policy of the Winnebago County Jail restricting his access to photographs, but only argues that the photos that were confiscated were not of a sexual nature. In addition, he argues that the people depicted in the photos were relatives. He also argues that the photos he kept did not run afoul the jail policy restricting the number of photos that could be kept

4

in his cell at one time. This is because there is another jail policy that allows prisoners to keep up to an inch of 8½x11 sheets of paper. Boyd contends that the photos on the 40 to 50 sheets of paper that Dahm seized during the shakedown of his cell should not have been taken because the photos were on printed paper.

Defendants argue that the photos that were confiscated from Boyd were either taken as evidence for a criminal matter or were confiscated due to a violation of the jail's policy about the number of photos that could be kept. The record shows that Boyd filed a replevin action in Wisconsin state court on January 3, 2012, for a return of the photos confiscated pursuant to the search warrant. The state court denied his petition for replevin because the photographs seized constituted evidence in a criminal investigation against Boyd for sexual assault of a child. (Compl. Ex. Q2, ECF No. 1-19.)

Because the Defendants acted reasonably in confiscating the photographs containing sexually explicit material, there is no First Amendment violation in regard to those photos. Boyd contends that the photo seized by Arrowood did not contain an image of a partially naked child. (Boyd Br. in Opp'n 2-3, ECF No. 37.) However, he does not dispute Defendants' proposed statement of facts that Arrowood observed a photo containing a partially naked young girl. Because the facts are undisputed and Boyd has no First Amendment right to possess a photo of a naked child, Arrowood did not violate his First Amendment rights by restricting his access to the photo.

As for the photos taken by Dahm that were contained on the 40 to 50 sheets of paper, Boyd is essentially attempting to transform a perceived loophole in the Winnebago County Jail's policy on photos into a First Amendment violation. Under the jail policy for "Miscellaneous items,"

5

prisoners are allowed ten non-Polaroid photos. (Compl. Ex. X, ECF No. 1-26.) Under the policy for "Reading Materials/Papers," prisoners are allowed one inch of "mail/letters (not to include legal papers)." (*Id.*) Boyd points to an affidavit by William Sanders in support of his argument that the jail policy allowed photos on printed papers in excess of the ten-photo limitation.[3] (Boyd Br. in Opp'n 4, ECF No. 37.)

While it is perhaps debatable whether the jail's policy allows prisoners to keep photos on printed paper received in the mail, Dahm's seizure of Boyd's papers containing photos was not an unreasonable application of the jail's ten-photo limit policy. Dahm's confiscation pursuant to the jail's policy was particularly reasonable here because of the shear number of photos involved. Policies restricting the number and types of photos have been found constitutional, and Boyd does not dispute that he was allowed to keep ten photos in his cell. And the sexually explicit photos that were seized were confiscated for legitimate reasons in connection with a criminal investigation. Moreover, those photos were seized pursuant to a valid search warrant.

Based on the undisputed facts here, Boyd is unable to establish a violation of his First Amendment rights. It follows that Boyd's First Amendment claims against Clayton, Weisse, Dahm, and Arrowood are without merit and must be dismissed. In addition, Boyd's claims against Sergeant Parent and Lieutenant Jensen must be dismissed because they were not involved in any of the incidents alleged in Boyd's complaint except in a supervisory capacity. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) ("[Section] 1983 does not allow actions against individuals merely for their supervisory role of others").

---

[3] Boyd, in his brief, references affidavits by two prisoners stating they were able to keep photos that were on printed paper in addition to ten non-Polaroid photos. I have only been able to locate in the record one affidavit by Sanders. (ECF No. 1-27.)

6

**B. Retaliation Claim**

Boyd also alleged in his complaint a retaliation claim against Dahm and Weisse. In order to prevail on his retaliation claim at the summary judgment stage, Boyd must "produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions." *Antoine v. Ramos*, Case No. 11-1807, 2012 WL 6031483, *2 (7th Cir. Dec. 5, 2012) (citing *Kidwell v. Eisenhaur*, 679 F.3d 957, 965 (7th Cir. 2012)). The basis for his retaliation claim against Dahm is that he "intentionally applied a rule" regarding the number of photos "in an incorrect manner so that pictures of his daughter would not be allowed." (Boyd Br. in Opp'n 4, ECF No. 37.) Boyd's argument is unconvincing because Dahm acted reasonably in applying the ten-photo policy limit when he confiscated the 40 to 50 sheets of paper that each contained between 4 and 12 photos (which amounts to anywhere between 160 and 600 photos). Thus, there was no deprivation that was likely to deter protected speech.

Boyd also argues that there is evidence of retaliation because other prisoners were allowed to keep photos of family members on printed paper whereas he was not. Sander's affidavit states that he was able to keep one photo of his son that was on printed paper. (Compl. Ex. Y, ECF No. 1-27.) Dahm's seizure of Boyd's large stack of papers containing photos does not support an inference that he was motivated by Boyd's exercise of protected speech. More likely is the inference that Dahm was motivated by Boyd's flagrant disregard of the jail's ten-photo limit policy.

Boyd also argues that on January 26, 2012, both Dahm and Weisse refused to give him a pen when he went to use the jail's law library. He alleges that both were motivated to retaliate against him because they knew that he was filing a replevin action against them. Boyd also states

7

that Weisse ordered another shakedown of his cell on January 31, 2012, to search for more photos. Even if this were true, Boyd's allegations do not lead to an inference that "the retaliation would deter a person of ordinary firmness from exercising First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). Alleging that on one occasion Dahm and Weisse denied his use of a pen is not sufficient to sustain a claim of retaliation. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1992) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ."). Finally, Boyd's bald statement that Weisse ordered a shakedown of his cell does not raise an inference that the order was made in retaliation against Boyd. For the reasons outlined above, I conclude that Boyd has not established a prima facie case of retaliation based on the evidence submitted to the Court.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (ECF No. 28) is **GRANTED**.

**SO ORDERED** this   3rd   day of January, 2013.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
